May it please the court. Good morning. I'm William Mark, counsel for the appellant Harkins Builders. I'd like to reserve, I hope, some time for rebuttal depending on whether I can get through some of the many issues that I have to discuss with the court today. As the court knows, this is a construction case and like most construction cases involves a number of different issues and we've raised a number in this appeal. Unless the court has a preference, I'd prefer to address the windows issue as that is the largest issue that we have in this appeal. The contract between these parties required that the windows for this unit, for this building, meet HC70 performance standards. These standards were specific and there were four of them and they needed to be met in order for the project to comply. Harkins hired a, as general contractors do, hired a subcontractor. The subcontractor in turn purchased these windows from a company called Wojan and those windows were certified by the manufacturer prior to delivery that they would meet HC70 requirements and they did not. When they were defect, the windows were installed, the windows leaked upon installation, the general contractor, my client, discovered that the windows leaked and thereafter for a period of many, many months, several months, the general contractor, the subcontractor who installed the windows and the manufacturer embarked on an effort to repair and restore the windows to the HC70 requirements. This effort was done with the acquiescence and knowledge of the owner of the building, 2300. Ultimately, not right away, ultimately. After the first month. There's no question, Judge Motz, that initially we began to repair. I know DeFrog's claim has gone away. Yes, sir. You're correct. But for the vast majority of the time, for the vast In fact, the owner retained the testing agency who ultimately tested the windows in August and according to the owner's testing agency, passed all the windows according to the judge's findings of fact. On liability for defective windows, the owner put up a witness, Joseph Shuffleton. He was their key liability expert. Mr. Shuffleton naturally was very critical about the windows. He testified that the windows as installed were not as represented by the manufacturer and I don't think there's any dispute about that. But you all sued them. Thank you. Pardon? Haven't you all sued the manufacturer and your subcontractor? I believe that there is a that there is litigation. I'm not involved with it. Your honor. Mr. Shuffleton spent the majority of his testimony testifying that the testing that had been done of these windows was inadequate. For instance, he said you didn't do the testing in accordance with A. A. M. A. 502, which is the standard by which the window should be tested. He said you should run the windows at 10 £10 per pressure and you did it at seven and that's not correct, etc. In fact, the majority, if not the conclusion of Mr Shuffleton, is that the testing for these windows was inadequate. Mr Shuffleton said, I think you can repair these windows, but they need to be properly tested. And until they're tested properly, we don't know whether these windows meet the H. C. 70 requirements. He said at joy Joint Appendix 11 80. What has been done is unreliable at this point in the remediation in the testing. It needs to be fully tested where the windows need to be replaced. Mr Shuffleton had no knowledge of any testing, um, that had failed for the for structural integrity, air resistance or forced entry. But he insisted that proper testing was necessary and it hadn't been done. We have urged the court that the trial court committed error when it determined, um, that Harkins breached the contract upon installation. And that's what the court said. This is what the district court said. 2300 demonstrated that the windows leaked were defective and were then heavily remediated. This is a sufficient showing to demonstrate that the windows did not comply and shift the burden to Harkins. The judge is saying, and I'll read another one, that the defect that the breach is determined as the affilee argues out of the box when these windows are installed and then shifts the burden to our client to prove that the windows are compliant. Yeah, but your argument sort of has a plausible start, but using knowledge, the windows leaked as so does the garage. Isn't that evidence of a breach? Your Honor, in a construction contract, I would, I would, believe me, if you constructed something for me and the windows in the garage leaked, I would think it was a breach. Had we turned over the project to the owner with leaking windows throughout the facility, then we would have breached. So the only way you would breach it is if at the time you turned it over, every window leaked. And it wouldn't matter whether there was any of these tests about future leaking or ability to withstand leaks. I mean, you're setting yourself an impossible, that can't be the law. I beg to differ, Your Honor. In this contract, as in most contracts, the work of the contractor is under his control until he completes the job. And in fact, the contract requires the contractor to address defects because no one's perfect when they build a building. Things happen, things are discovered. And as long as the contractor attends to them and takes care of them and then turns over the in a proper condition, there is no breach. This judge says you breached on day one when you put defective windows in there. And therefore, the burden shifted to the defendant to prove that the windows didn't leak when the plaintiff never produced sufficient evidence that the windows were not HC 70 compliant in their case in chief. Because Mr Shuffleton said you have to test them and no one's done it right. So there was no affirmative evidence from the plaintiffs at the end of their case that these windows were not HC 70 compliant. And what the trial judge does, in his opinion, is castigate or criticize the defendant for providing bad test results, which begs the question that should have been decided. And that is whether these windows were compliant at the time that they were turned over. And according to the evidence, nobody knows. That's our position with respect to liability. You agree that your client never put on any evidence that showed they comply with the contractual requirement. Your honor, we put on evidence through experts and through testing that the testing was satisfactory. The trial court elected to discount that testimony as explained in his opinion. So did you have a witness that said that the windows in the project were HC 70 compliant? I believe that we did. And I cannot cite that to the court. What if he didn't? If we did not, I believe that the testing we would have argued that the testing that we submitted was sufficient to demonstrate even if we didn't have a witness who acknowledged that you had a war of experts on that, right? I disagree, your honor, because they didn't have any experts that said it wasn't compliant. They're playing. The plaintiff's expert said I didn't do. We don't have sufficient testing to determine that is different than saying there any. Is there any real debate that these windows leak? They leaked when they were installed. Yes, ma'am. And there still is leakage in some part. This building there there was an allegation there was a and we address this in a couple of pages in our brief about one or two suggestions of leaks after turnover. You're talking 500 and some windows. We're talking about one or two drips that are addressed in detail in our brief, but we're not talking about massive leaking through all of this building. I just want to give you a full and fair opportunity to anticipate what the other side is going to because it's not really worthwhile to say there was no war against of experts. They didn't have any expert that said that there were leaks here. The windows weren't compliant. I mean, if that's your position, fine, but they do get they get to have a chance. I understand, Judge Motz. My position is that I'm not interested in your position. I'm interested in your representation of what the record was here. My representation is that there were experts called on both sides. Exactly. Yes, they were. My fine point on it, though, is that when you look at the plaintiff's expert, they had the burden of production. They didn't introduce sufficient evidence to show that the windows were not compliant, and the trial judge seemingly switches the burden over to the defendant to prove that they were, and that's our error. Well, if you happen to find a site in the record where the expert for your client says, yes, they were an affirmative representation, they were H whatever compliant. Yes, yes, sir. I will. I'd like to we're reviewing that clear error. Are we for the for the clear for the clear legal error of improperly switching the burden and and also and not but the evidence you're talking about the evidence that we would review his factual determination for clear error, right? All factual determinations. Yes, sir. That's the standard. What about the windows that you're talking about would be reviewed for clear air? I think the question of whether the burden was erroneously shifted is a legal question, Your Honor. But I think that obviously the whatever factual determinations that the court the court made are reviewed for clear air. I'm running out of time, and I've got a lot of other things to cover. If the court please, I'd like to go ahead and use what I'd hoped for some of rebuttal to address it. Um, the garage waterproofing. The expert for for the plaintiff testified on liability to about a half a page in the record. And he said, I went down to the to the garage and I saw it was leaking. It's a blindside system. I really can't tell exactly why it's leaking, but it could be one of these three reasons. That's all he said on liability. Why do you need to say anything more than that? I mean, you agreed to build a garage that didn't leak. Well, I don't know that we thought you reserved the right to have it leak. No, ma'am. We provided a five year warranty for to address future leaking in the in the testimony was just because it leaks doesn't mean there's a breach of contract. It's incumbent upon the plaintiff in alleging a breach to show how the breach occurred and what it is that we did. This expert did not do that. This expert said it could be this. It could be that those are the types of reasons. But I can't tell because I can't see the back side of the wall. That's what he said. 2300 contracted with you to build the building. You had all these sub 2300 didn't do it. It looks to you. So it doesn't have to point out which one of your subs did it or how it did if it's leaking is leaking. They didn't do it. Agreed, Your Honor. But the fact of the leak doesn't prove the breach. That's my point on. There's a point that I want to make on damages and I've and I'll do it here on on the garage waterproofing. The judge awarded 20 years of grouting and painting the garage waterproof. The basis for that award was an estimate prepared by the owner's project manner manager named Jason Ianotti, who testified as a lay witness, not as a identified expert. There was no evidence to support a 20 year estimate of 20 that the repairs would be needed for 20 years. There was in the trial judge at one point recognized and specifically said and acknowledged to an objection that it requires expert testimony to predict where whether in the future these walls are going to leak. The trial judge agreed with that, then turned around and accepted in his final decision the the estimate of Jason Ianotti and awarded 20 years of waterproofing repair costs quickly, Your Honor. Um, the contract balance. It's horn book law that the purpose of contract laws to restore the non breaching party to the point he would have been at the contract not been breached. This court awarded full damages for the window replacement, full damages for the garage fix, full damages for delay in the form of liquidated damages and yet refused to credit against that the unpaid balance of the contract, which is $510,000. I thought the court found there were other provisions of the contract that still were not fulfilled, such as the certification and all the subs had been paid. Um, it seems like there was something else. They're different. So I mean, if you haven't finished the conditions preceding the contract, why are you entitled to Well, you're correct that the judge did elude. He didn't specifically say what wasn't done. He said certain conditions had not been met, but that's a different issue than calculating contract damages. If the court were to look at the default for termination provision in the contract, um, the default for determination provision says that there is a 14.2.4 J. A. 93. I see that I'm out of time, Your Honor. The court also said that you didn't complete the punch list. That's correct. Well, I mean, if you have a contract, you're required to fulfill certain conditions before you're to be paid and you haven't fulfilled the conditions. What entitles you to payment? I'm drawing a distinction between payment and calculating damages for breach. We, um, you're you're talking about the issue about whether the final requirements for the contract were satisfied in order to enable final payment to be made. I'd suggest that those that those requirements were met, but the district court found otherwise don't we defer to that finding? You do. You do. You do defer to the factual finding unless it's clearly erroneous. What I'm what I'm getting to if you look at the termination for cause provision in 14.2.4, that's a J. A. 93. That provision says that if I terminate a contractor for cause right in the middle of the project, the contractors are not entitled to any further payment. I then finish the contract and at the end of my as the owner finished the contract. And at the end of that, if the unpaid balance of the contract exceeds what I have spent to complete it, I owe the unpaid balance to the contractor. If, on the other hand, the cost of completion exceeds the unpaid balance, the contractor owes me the difference. That is precisely the law of contract damages. It's embodied in the contract in the termination provision. Now, why would it be any different when we're talking about under a common law contract damages award that you must credit the unpaid balance of the contract? Otherwise, you are giving the owner half a million more dollars. It's a windfall. Now, to your point, Judge Agee, if it seems to me that if you wanted to defeat that $500,000, it was incumbent upon the owner to come in and say, well, because you didn't finish the punch list, I spent this. And because you didn't do these things, and those would be monetary offsets, but the trial court made, they didn't offer that evidence, and the trial court made no award on that. My bottom line on this is this party got full compensation for the damages and was not, but the $510,000 was not backed out. And that's, that violates contract law. Thank you. Ms. Millett? May it please the court, Patricia Millett on behalf of 2300 Pennsylvania Avenue. Let me address these points and start with when you raged Judge Motz about the expert testimony and just refer you to some of the citations in the record. I promise you if you want, and I will do it if you want, that I can give you a longer laundry list, but let me give you the key ones. With respect to the claim that our expert did not go the last mile and determine that these windows did not comply with the HC70 standard, I refer you to Joint Appendix 1189. And I will This is Mr. Shuffleton, the expert. Page 33 of our brief has a bunch of these citations, but this was to sum it all up. Quote, the testing along the entire circumstance of things indicates a non-performance to HC70, particularly as it relates to water penetration resistance. Mr. Shuffleton also found out that structural integrity was necessarily impaired, JA 1174. Why? This remediation shot these windows through with holes, foam, they were Swiss cheese, JA 1212. 56 holes in a window. If I want to buy a Mercedes-Benz, and these were Mercedes-Benz windows, and the contractor delivers me a window that everyone agreed, or a car that was in a wreck, and they've heavily remediated it by putting 56 holes in it, foam, sealant that the expert testified was going to decay, I'm not getting what I paid for. I'm not getting my new Mercedes-Benz. That's what this was about. I think that your colleague started out with the argument that there, and it's in the briefs as well, that the district court put the burden on the wrong party, and so what do you say to that? Let me address that, and I have one more expert to get back to on that. With respect to that, you have to, as this court knows, read decision, district court decisions as a whole, and so if you go again to page 1449 and 1450, here's what the district court found, and it's not... The district court would be applying D.C. law? D.C. law, absolutely, which has a burden of production shift, and I'll try to explain why I think the law got, is complicated here, and what you have is not an error, but simply a condensed explanation by the district court, but if you look, what the district court found is not only, not only that we had shown that these as installed were defective, no one disputes that, but cross over to page 1450, where he says, not only were they heavily remediated, but again, critically, remediation made things worse. The window remediation attempts only added to the concerns that the windows failed to comply. You have to read both pages of the district court's decision together, and once he did that, he made those findings. That was a prima facie case that we didn't have the Mercedes-Benz windows that we contracted for. D.C. law then said the burden of production shifts to the other side, and that's why at the bottom of 1449, you hear him, after using some casual language about, I'll admit, about the burden of persuasion here, that they didn't come forward with evidence, and it's language was condensed, was because as to the core question of these windows' defect, no one disputed that as installed, we didn't get what we asked for, no one disputed these things were heavily remediated. And so your argument is you're relying on the finding that he made that after the remediation, things only got worse. Things got worse, absolutely, which is fully supported by the testimony, and to get back to the other expert point, which relates here, their witness, you asked about their witness, their vice president, Mr. Loftus, admitted, and this is on JA1237, that even after six rounds of remediation in August, 21% of the tested windows were still failing. That's their vice president that said that. So that, we think, addressed this question. The prima facie case was settled, they were defective as installed, they were heavily remediated, Swiss cheese, 56 holes, foam, sealant that will decay, tests, and then the district court went further, 1450 to 1451. If you think there's any question about burden, the district court goes through a series, a litany of reasons why these windows aren't the contract windows, and that's all our evidence that he's included putting on their employees. We put on Mr. Loftus, their vice president, to admit that the windows were still failing at a 21% rate in August, after six rounds of remediation. Can I ask you a question that's very briefly discussed in your brief, which to me was a little unclear in the record, and that is about the $82,600. As I read your brief, your basic argument is they haven't preserved their contention that the award of that money was error. You know, we don't require people to file motions for reconsideration in the district court, so how is this situation different? So, two responses to that. First of all, there are case laws cited in our brief. I've not read that case law. Right, so where courts do, in fact, something is correctable in district court, but let me just be clear. I have more responses to the reply brief, which actually is the one that laid all of this out and has substantial, serious, factual assumptions that are not in the record, but up front, let me just be clear. I can't give you record answers to the $82,000 because it wasn't raised in district court. That's the problem. There were proposed findings of fact and conclusions of law by the parties here. There were, but not adopted, or at least not verbatim, in some cases, by the district court. Exactly, and with respect to that, the thing that makes the HVAC complicated is that the district court was finding that we move the condensers, which of course were related to HVAC, and that all of the windows are going to be replaced, and all of the windows are tied into the HVAC system. They have, like a hotel room, a little button on it, and so that if you open the window, because utilities are included in the rent here, and so if you open the window, they want the air conditioning to shut off so the utilities don't go up. It has one of those little buttons on it, and so there is a connection, a logical connection, between HVAC condensers and windows all being replaced, and we never got a chance to probe why the district court's kept that in. Now, maybe it was a mistake. Maybe it was these connections, which again are included in the record, JA1704. As far as this $82,000 or $162,000 that they're claiming was incorrect, putting aside the waiver, can you say whether they're right or wrong on that? I can say it's complicated. I think they may be, if they're assuming that the monarch estimate is broken down, but the district court didn't sort of write in all these pieces. If they're assuming that that's how the numbers added up, we just got a total number. Your answer to that, yes, no, or just don't know? It's that we don't know, because had they raised this in district court, we wouldn't... Shouldn't we have an obligation to get it right? I'm sorry? Why shouldn't we get it right? I think it's not this court's job to get it right, particularly when we don't even get details until the reply brief, let alone not raising it in district court. Well, I think that courts of appeals don't adjust judgments unless it's clear from the face, and you have a collective number here, and that's why the assumption that it was $82,000 automatically included in there for this moving that shouldn't have been in there as opposed to a determination by the judge that HVAC is related to condensers, HVAC is related to these window replacements, there may be something in there, and the D.C. law standard is not precision like this. It's a just and reasonable estimate of the damages, and so that's why I think it's much more complicated. Those represent damages that do not represent an injury. Excuse me? I think I'm intuiting that the appellant defending this case is saying this $80,000, $160,000, whatever it is, are damages which do not represent an injury. Right, and that is obviously something that one needs to have record explication on, and my only point to you is I understand their argument. There's a maybe for that, but there are other things that make this case more complicated in the record that would make it maybe be appropriate to include some or all of that $82,000 in because of the connection between HVAC and windows and condensers that were getting remediated. I understand why we shouldn't remand at least this to the District Court for its determination, and that's what I guess we're looking for an answer. It's fine for you to say, okay, there are reasons on both sides, but is your rationale, I had thought from your brief, your rationale was that they haven't preserved the argument. That is our central one, and that relates obviously to remand as well because there's got to be a reason, and this is a bench rule 59, specifically provides for this, right? There's got to be a reason they didn't ask the District Court first, and there's got to be a reason they didn't lay it out well in their opening brief, but remand. What was helpful perhaps to your argument was that in their proposed finding for HVAC, they talk about replacement windows. Mr. Bellingham's estimate to replace the windows totaled $2,683,962. This is the $3 million figure minus the $390,000 figure. It doesn't include a subtraction for the $82,000 figure, so it looks for all the world like they didn't assert that the $82,000 figure was properly subtracted. Correct. Correct. I agree, but on the remand point, and yes, but the remand point on top of that is that, look, this has been going on for years. Remands cost money to businesses. We would like to have this done and move forward, get our judgment so we can replace these windows. People are living in these apartments. We would like our judgment, and there really is no particular reason, and there's plenty of reasons not for courts to say, okay, late in the day, told us for the go back and spend more time in district court. They have given no explanation as to why they didn't raise it in a timely manner, in a manner that would have saved everybody a lot of cost and trouble and time, and quite frankly, attorney's fees and delay, most importantly, in getting the judgment so we can replace these windows. Judgment has not been paid. It has not been paid. None of it's been paid. It's accruing interest. It is accruing interest, and there's a bond, obviously, for purposes of this appeal. One more thing. So, if the court should largely affirm the bond becomes payable? I don't understand. It's simply a requirement for if you're not paying a judgment on appeal. That's all it is. It's nothing more than that. It's obviously protection for people. One other thing, just to finish on the burden of proof, keep in mind the reason the district condensed and talked about burden of production is contract term 3.5.1, which says if you install things defectively, contractor, you have the burden of, and the architect demands, as it did here, of showing that the remediated item is up to standard from the contract. So, that's why the district court was talking the way the district court was. There's no, the weight of the evidence, all of the legal elements required for a fine and a breach of contract are here, and they were all done through our evidence. If you have further questions on either of these topics, if not, I would like to address briefly the garage question that was raised. And with respect to that, understand what happened here. This isn't simply we got bad waterproof and we They built into the foundation walls of this apartment complex a leak problem, a water problem that cannot be fixed. It cannot be fixed, unless you want to tear these foundation walls and everything else down and move everybody out. It can't be fixed, and you can't get in there to see which of the potential causes for the leak apply. But it is not disputed by Parkins that the three causes listed by our expert after visiting the garage, Mr. Shackleton, bad waterproofing, bad installation, something bad after the fact, are all their responsibility. So, that is more than sufficient to support the district court's determination of a breach of contract on that front. And the damages they got were less than we paid for the waterproofing we didn't get. We didn't get our waterproofing and we now have a foundation wall problem with water leaking behind it. So, the district court's decision was perfectly reasonable. With respect to the contract balance, it was also raised, the district court was absolutely correct, this is our conditions precedent that we're not satisfied in this case. And those conditions precedent included, let us know that you've paid off our subcontractors so we're not at risk of liens. Now, to be sure, they did file an affidavit saying that the subcontractors have been paid off, but they admitted it was false. That doesn't count for satisfying the conditions precedent. They also were supposed to do an inspection with the architect, right? This is like, if you think of like a housing inspection when you're buying a house, right? You want the house, but you also want that inspection. You want an expert eye to go through and see other things that you might not know about, but that could be coming down the line. That is what we didn't get. We later found cracks in the walls that might have been uncovered had we had this inspection. So, the opportunity, the risk of not having it, the risk of buying a house without a housing inspection, that's part of what is wrapped into the $510,000 contract balance. What would happen if they came back now and said, we're going to meet with the architect to do this, and here's a new certificate, which is a correct certificate that all the subs are paid? Would they get the $510,000? No, because we can't, first of all, you can't go back in time and have the inspection that should have happened in 2010, and quite frankly, we're done with this relationship, all right? We don't actually want them coming back with the architect. I understand that, but there was a contract with obligations, so are you saying they're prohibited from performing them now? Well, at this point, the contract relationship is terminated, and it's simply a question of whether there was breach and damages for that breach, and it is normally not a consequence of contract law to essentially enjoin people to go back into further contractual relationship rather than pay the damages for not having it done right. That's normally the remedy under contract law. The court has no further questions? I don't think we do. Thank you very much. Sir, we'll give you a few minutes, maybe every few minutes, and rebuttal, I think you used a lot of it the first time around. Two minutes. So this $82,000 or $160,000, if you throw in a few other things, that's something you never raised in the district court? That's correct, Your Honor. Even though you were required by the district court to come up with pretty fancy proposed conclusions of law and statements of fact, right? Well, I mean, it looks pretty fancy to me, nicely typed, lots of pages. Yeah, the way this happened, Your Honors, is that the monarch estimate, which included not only the cost of replacing the windows, but at the time, there was a liability issue on the roof. So monarch included roof, monarch included windows, monarch had an estimate to do a bunch of things. And what the court did when it decided that it wasn't going to find in favor of the owner on the roof, it took the monarch estimate, apparently, this is what it appears that they did, what the court did, and took out those costs that were roofelated because there were no damages to award. Yeah, but... And in our view, didn't take them all out. To the $82,000, that's a separate and discreet item. That's not proportional to other things that you didn't raise to the district court. You expressly didn't raise it. You subtracted from the $3 million figure, $390,000. And then you're saying, and they should have proportionally, the district court should have proportionally decreased other damages. That's certainly understandable. But the $82,000 is separate and apart. It's not a proportional thing. The $82,000 was of a long list of items. Yeah, but you don't have that subtracted in your proposed alternative findings and facts. You subtract only the $390,000 from the $3 million factor. You don't subtract. Well, in our brief, I know that we made that calculation. In your brief here? Yes, yes. So that's, I mean, we're asking about the court below. But my point is, is that at the court below, there wasn't any basis to do anything with the findings at that point, because the entire estimate and all the claims were going to the judge. And it was only when after- Well, you did do it, though. I mean, there may, you know, you, I don't know, were you the lawyer below? People are always telling me, I wasn't the lawyer below, but it's your case now. I understand. So you have, on page 192, you have that $2.6 million, and you're subtracting from a $390,000. But you're not subtracting this other $80,000. I can't answer the question. Right. Is there anything else you want to tell us about it real quick? I don't think so. Okay. Thank you very much.
judges: Diana Gribbon Motz, Robert B. King, G. Steven Agee